Citation Nr: 1806333 
Decision Date: 01/31/18 Archive Date: 02/07/18

DOCKET NO. 12-13 102 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUE

Entitlement to an initial compensable rating for service-connected hypertension. 


ATTORNEY FOR THE BOARD

T. Harper, Associate Counsel

INTRODUCTION

The Veteran served on active duty from August 2001 to October 2005 in the United States Air Force.

This matter is before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico.

As a procedural matter, this matter was previously before the Board in June 2015, March 2016, and April 2017. The Board remanded the claim for further development. This claim has now been returned to the Board for further appellate consideration. 

FINDING OF FACT

For the entire appeal period, the Veteran's hypertension has required continuous medication for control, but has not been manifested by diastolic pressure of predominantly 100 or more, a history of diastolic pressure of predominantly 100 or more, or by systolic pressure of predominantly 160 or more. 


CONCLUSION OF LAW

The criteria for a compensable disability rating for hypertension are not met. 
38 U.S.C. §§ 1110, 1155, 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.655, 4.1, 4.3, 4.7, 4.21, 4.31, 4.104, Diagnostic Code 7101 (2017).




 (CONTINUED ON NEXT PAGE)


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist 

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017).

Here, the VCAA duty to notify was satisfied by way of a pre-adjudicatory letter sent to the Veteran in December 2009. This letter informed the Veteran of the evidence required to substantiate the claim, the respective responsibilities in obtaining supporting evidence, and how disability ratings and effective dates are assigned. The Veteran has received all required notice concerning this claim. 

VA also met its duty to assist. 38 U.S.C. § 5103A; 38 C.F.R. § 3.159. The Veteran's claims file contains his service treatment records (STRs), an August 2010 VA examination and chest x-ray report, and the Veteran's statements. In response to the June 2015 and March 2016 Board remands, all VA treatment records were obtained from the San Juan VAMC. The only post-service VA treatment records found were the October 2010 VA examination and associated chest x-ray report related to his claim for service connection for hypertension. The RO determined there were no other outstanding VA treatment records for the Veteran. See August 2016 supplemental statement of the case. 

Additionally, by letters dated September 2015 and March 2016, VA requested that the Veteran identify all pertinent private treatment providers and to authorize the release of relevant private medical records. These letters were not returned, and the Veteran did not respond to these requests. 

Additionally, the Veteran was afforded a VA examination in October 2010 related to his claim for service connection for hypertension. However, VA scheduled an additional examination in April 2016, per the Board's March 2016 remand, to evaluate the Veteran's current severity of the service-connected hypertension. The examination was cancelled when the Veteran failed to appear for examination. Subsequently, the Veteran was rescheduled for a VA examination in May 2016. In response, the Veteran called and cancelled the examination. The Veteran indicated he would not be in Puerto Rico until further notice, did not update his current address with the RO, and did not reschedule the examination. See May 2016 correspondence. A letter was sent to the Veteran in June 2016 indicating he had failed to appear for examination and advising him to reschedule within 30 days. This letter was returned undeliverable in July 2016. 

The Board remanded the claim for the third time in April 2017. Attempts were made to find and verify the Veteran's current address. Once the Veteran was located in Dallas, Texas, the Veteran was scheduled for an additional VA examination at the Fort Worth VAMC. Notice was sent to the Veteran by letter dated October 2017 and requested the Veteran RSVP for the VA examination by November 6, 2017. In addition to the letter, attempts were made to contact the Veteran by telephone on October 24, 2017 and October 26, 2017 but were unsuccessful; however, voicemail messages were left on both dates. Attempts to contact the Veteran again were made multiple times on November 7, 2017 and November 8, 2017. The Veteran did not respond to the telephone calls, voicemail messages, or the October 2017 appointment letter. Further, the October 2017 VA examination appointment letter, which included the consequences of his failure to appear, was not returned to VA. 

As reflected above, the Veteran was scheduled for additional VA examinations, but did not appear or did not reschedule. There is no indication from the record that notice of the scheduled examinations was not sent to him at his last known address. In the absence of clear evidence to the contrary, the law presumes the regularity of the administrative process. Mindenhall v. Brown, 7 Vet. App. 271, 274 (1994) (citing Ashley v. Derwinski, 2 Vet. App. 62, 64-65 (1992)). Further, the Veteran has not asserted that he did not receive notice of the scheduled examinations. In fact, there is indication that the Veteran knew of at least the May 2016 VA examination appointment and chose to cancel without rescheduling. Further, the Veteran also chose not to update his current address with VA despite reporting that he would he away from Puerto Rico indefinitely. Of note, it appears the Veteran has not contacted VA since May 2016. 

Under 38 C.F.R. § 3.655 (a), when entitlement to a benefit cannot be established without a current VA examination or reexamination and a claimant, without good cause, fails to report for such examination or reexamination, action shall be taken in accordance with 38 C.F.R. § 3.655 (b) or (c) as appropriate. 38 C.F.R. § 3.655 (b) applies to original or reopened claims or claims for increase, while 38 C.F.R. 
§ 3.655(c) applies to running awards, when the issue is continuing entitlement. More specifically, when a claimant fails to report for a medical examination scheduled in conjunction with an original compensation claim, without good cause, the claim shall be rated based on the evidence of record. See 38 C.F.R. § 3.655 (b). Additionally, when a claimant fails to report for a scheduled medical examination, without good cause, a claim for an increase shall be denied without review of the evidence of record. Examples of good cause include, but are not limited to, the illness or hospitalization of the claimant or death of an immediate family member. See 38 C.F.R. § 3.655 (a). 

The Veteran has not contacted VA since May 2016 and has failed to provide any reason for his failure to appear for examination. The Board finds that he has not provided good cause; thus, the Board will decide the Veteran's claim on the evidence of record. 

The Board emphasizes that the duty to assist is a two-way street. Due to his failure to attend or reschedule the requested VA examination, there is no further duty to provide any more VA examinations relating to this claim. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). 

The Veteran called the RO in May 2016 and informed them he would be out of the country indefinitely, but did not provide new contact information, did not reschedule the VA examination, and has not contacted VA since that time. The Veteran failed to respond to multiple requests for outstanding private treatment records or to identify private treatment providers for which records could be requested. Finally, the Veteran has not challenged the adequacy of VA's fulfillment of its duty to notify or assist in development of his claim. The Board has remanded the claim three times to provide the Veteran ample opportunity to participate in his claim. The duty to assist has therefore been satisfied and there is no reasonable possibility that any further assistance to the Veteran by VA would be capable of substantiating his claim. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

Additionally, the Board finds there was substantial compliance with the June 2015, March 2016, and April 2017 Board remand directives. A remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268 (1998). Nonetheless, it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (finding substantial compliance where an opinion was provided by a neurologist as opposed to an internal medicine specialist requested by the Board); Dyment v. West, 13 Vet. App. 141 (1999). All outstanding VA treatment records after June 2015 and March 2016 Board remands from the San Juan VAMC were obtained and associated with the file. The Veteran was contacted by letters dated September 2015 and March 2016 and asked to identify any private medical providers that may have relevant records and asked to authorize the release of such records. The Veteran failed to respond to these requests. Several VA examinations were scheduled for the Veteran, but he failed to appear for examination. Attempts were made to locate the Veteran, and those attempts appear to have been successful. The Veteran was then scheduled for an additional VA examination at a VAMC near his new address, notified of that appointment, but failed to respond to VA. Finally, the claims were readjudicated based on the evidence in the record. Thus, VA substantially complied with all the prior Board remand directives. 

The Veteran has not identified, and the record does not otherwise suggest, any additional existing evidence that is necessary for a fair adjudication of this claim that has not been obtained and that is obtainable. He has received all essential notice, has had a meaningful opportunity to participate in the development of this claim, and is not prejudiced by any technical notice deficiency along the way. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). All necessary development has been accomplished to the extent possible and, therefore, appellate review of this claim may proceed without unduly prejudicing the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). 




II. Pertinent Laws and Regulations Governing Increased Rating Claims

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 
38 U.S.C. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21.

Where there is a question as to which of two disability ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 
38 C.F.R. § 4.7. It is the defined and consistently applied policy of VA to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25. Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14. It is possible for a veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes; however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

Where the schedular criteria does not provide for a noncompensable rating, such a rating is assigned when the requirements for a compensable rating are not met. 
38 C.F.R. § 4.31.

Where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. See Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are appropriate for any initial rating claim when the factual findings show distinct time periods during the appeal period where the service-connected disability exhibits symptoms that would warrant different ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

A veteran is competent to report symptoms because this requires only personal knowledge, not medical expertise, as it comes to him through their senses. See Layno v. Brown, 6 Vet. App. 465 (1994). Lay testimony is competent to establish the presence of observable symptomatology, where the determination is not medical in nature and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303 (2007).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with a veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

Turning to the claim at hand, the Veteran's hypertension is currently evaluated as noncompensably disabling under Diagnostic Code (DC) 7101. 38 C.F.R. § 4.104. The Veteran contends he should be assigned a compensable rating for his disability. 

Under DC 7101, a 10 percent disability rating is assigned for hypertensive vascular disease (hypertension and isolated systolic hypertension) with diastolic pressure predominantly 100 or more, systolic pressure predominantly 160 or more, or minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. A 20 percent disability rating is assigned for hypertensive vascular disease with diastolic pressure predominantly 110 or more or systolic pressure predominantly 200 or more. A 40 percent disability rating is assigned for hypertensive vascular disease with diastolic pressure predominantly 120 or more. A maximum schedular 60 percent rating is assigned for hypertensive vascular disease with diastolic pressure predominantly 130 or more.

Note (1) indicates that hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. For purposes of this section, the term "hypertension" means that the diastolic blood pressure is predominantly 90 mm or greater, and "isolated systolic hypertension" means that the systolic blood pressure is predominantly 160 mm or greater, with a diastolic blood pressure of less than 90 mm. Note (2) advises raters to evaluate hypertension due to aortic insufficiency or hyperthyroidism, which is usually the isolated systolic type, as part of the condition causing it rather than by a separate evaluation. Note (3) directs raters to rate hypertension separately from hypertensive heart disease and other types of heart disease. 

The evidence of record includes an August 2010 VA examination and associated chest x-ray report afforded to the Veteran for his original claim of service-connection for hypertension. There are no additional VA or private treatment records associated with the claims file. 

The August 2010 VA examination report reflects a diagnosis of hypertension requiring continuous medication but with no history of diastolic blood pressure elevation to predominantly 100 or more or systolic blood pressure elevation to predominately 160 or more. The examiner noted blood pressure readings during the examination of 119/72, 120/70, and 121/72. 

The Veteran contends he should be entitled to a compensable disability rating because his hypertension is chronic and requires daily medication to control it. See December 2010 notice of disagreement. Additionally, the Veteran contends that his blood pressure readings were not as high as required for assignment of a compensable disability rating. Instead, the Veteran believes that he should be granted a compensable disability rating because the daily blood pressure medication is associated with the risk of side effects and because hypertension may lead to other long term disabilities. Additionally, the Veteran contends that, at one point in time, he had elevated liver enzymes that were reduced when his hypertension medication was decreased. 

The Board has considered the Veteran's concerns of potential risks of side effects and of potential additional disabilities that may develop due to the service-connected hypertension. However, based on the medical evidence of record, these concerns are hypothetical. To be considered for a higher rating, the evidence of record, to include the Veteran's lay evidence, must show that any side effects are currently occurring and are causing additional disability. There is no evidence associated with the claims file at this time to support the award of a separate rating for any associated manifestations of the Veteran's hypertension. 

Based on all evidence of record, both lay and medical, the Board finds that the criteria for a compensable rating for hypertension are not met. In that regard, the Board acknowledges that the Veteran's hypertension requires continuous medication as shown by the medical evidence. However, the Board notes the only blood pressure readings during the appellate period in the record are from the August 2010 VA examination. The rating criteria are based on predominant diastolic and systolic pressures. The evidence of record of blood pressure readings during or shortly before the appellate period show that diastolic pressure readings are predominantly under 100, and that his systolic pressure readings are predominantly under 160. Thus, although his hypertension requires continuous medication to control his disability, the evidence of record does not show that his hypertension is (or has historically been) predominantly manifested by diastolic pressure that is 100 or more, or systolic pressure that is predominantly 160 or more. 

Finally, the Veteran has not raised any other issues and no other issues been reasonably raised by the record. See Doucette v. Shulkin, 28 Vet. App. 366, 69-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

Based on the foregoing, the Board finds that the preponderance of the evidence is against granting a compensable rating for the Veteran's hypertension. Accordingly, a compensable disability rating for hypertension is not warranted in this case.
 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 55.


ORDER

A compensable rating for the service-connected hypertension is denied. 



____________________________________________
S. B. MAYS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs